UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DANIELLE WELLINGTON,
Individually and on Behalf of All
Others Similarly Situated,

                    Plaintiff,

          -v-                                    5:20-CV-1367

EMPOWER FEDERAL CREDIT
UNION, and DOES 1 through 5,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                          OF COUNSEL:

McCUNE WRIGHT AREVALO LLP             ELAINE KUSEL, ESQ.
Attorneys for Plaintiff              SHERIEF MORSY, ESQ.
One Gateway Center, Suite 2600
Newark, NJ 07102

McCUNE WRIGHT AREVALO, LLP            RICHARD DALE McCUNE,
Attorneys for Plaintiff                JR., ESQ.
3281 East Guasti Road, Suite 100
Ontario, CA 91761

GORDON, REES LAW FIRM                 PETER G. SIACHOS, ESQ.
Attorneys for Defendants             QING GUO, ESQ.
18 Columbia Turnpike, Suite 220
Florham Park, NJ 07932

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I.  INTRODUCTION

On November 4, 2020, plaintiff Danielle Wellington ("Wellington" or "plaintiff"), an accountholder at defendant Empower Federal Credit Union ("Empower"), filed this putative class action against Empower and Jane Does 1 through 5 (collectively "defendants").  According to plaintiff's two-count class complaint, defendants violated certain disclosure requirements governing bank overdraft fees.

On February 2, 2021, Empower moved under Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss the complaint.  The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.

## II.  BACKGROUND

The following factual allegations are taken from Wellington's complaint, Dkt. No. 1 ("Compl."), and are assumed true for the purpose of resolving Empower's motion to dismiss.

In August of 2019, Wellington opened a checking account with Empower, a credit union headquartered in Syracuse, New York.  Compl. ¶¶ 16, 24.  As part of her enrollment, plaintiff "opted in" to a service called "Courtesy Pay," which is Empower's overdraft program for one-time debit card and ATM transactions.  *Id*. ¶ 24.

Under the Courtesy Pay program, Empower automatically pays for a transaction using its own funds when the transaction would cause a customer's account to be overdrawn, or where the customer's account lacks sufficient funds.  Compl. ¶¶ 17–18.  In exchange for this service, Empower charges a $35 "overdraft" fee.[1]  *Id*. ¶¶ 19, 21.  A customer is allowed to make up to five of these overdraft transactions per day.  *Id*. ¶ 21.

The median debit card transaction that leads to an overdraft fee is $24, which, on average, is repaid within three days.  Compl. ¶¶ 19, 27.  Thus, put in lending terms, this kind of small, short-term loan would carry a 17,000% annual percentage rate ("APR").  *Id*. ¶ 19.  These fees generate a significant amount of revenue for banks and credit unions.  *Id*. ¶ 20.  For example, in 2019 Empower collected $18 million in income from these fees.  *Id*. ¶16.

According to Wellington, these fees also amount to "very expensive credit that harms the poorest customers and creates substantial profit to the financial institution."  Compl. ¶ 19.  As plaintiff explains, the people most likely to overdraw their checking accounts tend to belong to marginalized groups.  *Id*. ¶ 23.  They tend to be people of color: non-whites are 83% more likely to pay an overdraft fee than whites.  Compl. ¶ 23.  They tend to be

---

[1]  Empower's Courtesy Pay program also permits it to charge a "non-sufficient funds" ("NSF") fee when a debit transaction is declined.  Compl. ¶ 18.  The cost of NSF fees are similar to that of overdraft fees, despite the fact that financial institutions do not take any financial risks by declining a debit transaction.  *Id*. ¶ 19–21.

low-income: more than 50% of accountholders assessed overdraft fees earned under $40,000 a year.  *Id.*  And they tend to be young: a twenty-five-year old is 133% more likely to pay an overdraft penalty than a sixty-five-year-old.  *Id.*

To combat this issue, the Federal Reserve, which has regulatory oversight over financial institutions, amended Regulation E to require financial institutions to obtain affirmative consent from accountholders (*i.e.*, to require them to "opt-in") before assessing any overdraft fees on certain debit card transactions.  Compl. ¶ 31.  As amended, Regulation E also prevents financial institutions from assessing NSF fees on accountholders who do not provide affirmative consent, as the denial of a transaction means that no transaction has taken place and thus there is no transaction to return unpaid.  *Id.*

To be valid under Regulation E, a financial institution's opt-in agreement for overdraft or NSF fees must be a stand-alone document that accurately discloses the overdraft policies in a "clear and readily understandable manner."  Compl. ¶ 34.  And the burden is on the financial institution to establish that the accountholder opted-in to overdraft coverage through a written agreement or a confirmation letter.  *Id.*

Regulation E also requires financial institutions to inform accountholders who opt-in whether the overdraft or NSF fees will be based on the "actual balance" or "available balance" in the customer's account.  Compl. ¶¶ 39, 45.  An "actual balance" (sometimes called a "ledger balance" or "current

balance") is the actual amount of money in a customer's account at any particular time. *Id.* ¶ 37. In contrast, an "available balance" is a financial industry term that is calculated as the customer's actual balance reduced "by the amount the bank or credit union has either held from deposits or held from the account because of authorized debit transactions that have not yet come in (and may never come in) for payment." *Id.*

On September 7, 2020, Empower assessed an overdraft fee on Wellington's bank account in connection with a debit card transaction. Compl. ¶ 24. Plaintiff alleges that Empower's "Courtesy Pay" program violates Regulation E because the credit union's written opt-in agreement fails to clearly disclose that the credit union uses the "available balance" metric to assess overdraft fees. *Id.* ¶¶ 48–55. Because Empower "used an identical opt-in agreement with Plaintiff and all putative class members," plaintiff seeks to vindicate the rights of a class of accountholders who were improperly assessed one or more of these overdraft fees. *See id.* ¶¶ 62–76.

## III. **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must present a claim for relief that is plausible on its face. *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009). When assessing the plausibility of a plaintiff's complaint, the court should construe the complaint liberally and draw all reasonable inferences in plaintiff's favor. *Ginsburg v. City of Ithaca*, 839 F. Supp. 2d

537, 540 (N.D.N.Y. 2012).  However, as long as a plaintiff's complaint pleads facts that create a reasonable inference that the defendant is liable for the misconduct alleged, denial of a motion to dismiss is proper.  *Ashcroft*, 556 U.S. at 678.

## IV.  <u>DISCUSSION</u>

Wellington's class complaint asserts a claim under the Electronic Fund Transfer Act ("EFTA") based on Empower's alleged violation of Regulation E's so-called "Opt In Rule."  Compl. ¶¶ 77–83.  Plaintiff also asserts a claim under New York General Business Law ("GBL") § 349 based on the allegedly deceptive and misleading statements in Empower's opt-in disclosure agreement.  *Id*. ¶¶ 84–91.

As an initial matter, however, Empower's motion to dismiss relies heavily on the terms and effect of several documents that are all extraneous to Wellington's complaint.  First, Empower has attached as an exhibit a copy of its "Business Membership & Account Agreement."  Ex. A to Siachos Cert., Dkt. No. 16 at 4–16.  Second, Empower has attached as an exhibit a partially redacted copy of plaintiff's "Member Application and Ownership Information."  Ex. B to Siachos Cert., Dkt. No. 16 at 18–19 ("Membership Application").  This Membership Application includes the following language: "[b]y signing below, I/we agree to the terms and conditions of the Membership

and Account Agreement[.]"  *Id.*  Immediately underneath this paragraph is what appears to be plaintiff's signature.  *Id.*

"Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials."  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

"Generally, [i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 691 (S.D.N.Y. 2011) (cleaned up).

"[I]n some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss."  *Goel*, 820 F.3d at 559.  "A document is integral to the complaint where the complaint relies heavily upon its terms and effect."  *Id.* (cleaned up).  Importantly, though, "[m]erely mentioning a document in the complaint will not satisfy this standard; indeed, even offering 'limited quotation[s]' from the document is not enough."  *Goel*, 820 F.3d at 559 (citation omitted).

"In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Goel*, 820 F.3d at 559 (cleaned up).

Upon review, consideration of Empower's exhibits would be improper at this stage of the proceedings.  First, Wellington's complaint makes no mention of either a Membership Application or a Membership Agreement.  Accordingly, neither of the exhibits offered by Empower can be considered clearly incorporated by reference. *See, e.g.*, *Thomas v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) ("To be incorporated by reference, the [c]omplaint must make a clear, definite and substantial reference to the documents.").

Second, even if these exhibits were considered "integral" to Wellington's complaint, there is an apparent dispute over the authenticity and/or the accuracy of these documents. *See, e.g.*, *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) ("[E]ven if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.").

In opposition, Wellington has disputed the accuracy and relevance of the Membership & Account Agreement to the claims in this suit.  *See* Pl.'s Opp'n, Dkt. No. 19 at 15–16.  According to plaintiff, she received a non-business copy of this agreement when she enrolled as a member at Empower.  *Id*. at 15.  Indeed, as part of its reply submission Empower attached another, different "Membership & Account Agreement."  Ex. A to Siachos Decl., Dkt. No. 22-2.

Further, according to Wellington, neither of her claims for relief rely on the terms of the Membership & Account Agreement.  Pl.'s Opp'n at 16.  Instead, as plaintiff explains, the express terms of Regulation E obligate the financial institution to provide an opt-in agreement on a separate, "segregated," stand-alone document.  *Id*.

At this point in the proceedings, the Court has neither the ability nor the authority to determine which Membership Agreement is the proper one, or even whether the Regulation E language belongs in the agreement or elsewhere.  *See generally*, 12 C.F.R. § 1005.17 (b) (requiring disclosure agreement to be "segregated from all other information").  Accordingly, Empower's various exhibits will not be considered in resolving this motion.

## A.  EFTA

Empower contends that Wellington's EFTA claim based on a violation of Regulation E fails because "Empower FCU's Courtesy Pay opt-in language tracks the A-9 Model Consent Form for Overdraft Services ("Model Form A-

9"), which was promulgated by the Consumer Financial Protection Bureau (CFPB), the agency charged with promulgating regulations to carry out EFTA's purposes."  Def.'s Mem., Dkt. No. 15 at 11.

These arguments rely on consideration of the extraneous materials that have already been excluded.  However, even assuming that Empower's extraneous evidence should be considered, Wellington has still plausibly alleged violations of Regulation E.

As a general matter, Regulation E "requires a financial institution to provide notice, in writing, of that institution's overdraft service and provide a reasonable opportunity for the customer to affirmatively opt into such a service."  *Lussoro v. Ocean Financial Federal Credit Union*, 456 F. Supp.3d 474, 492 (E.D.N.Y. 2020).

When a financial institution fails to do so, an individual may enforce her rights though a private right of action.  *Lussoro*, 456 F. Supp. 3d at 494 ("In light of the fact that Congress included a private right of action in the statute itself, 15 U.S.C. § 1693m, and specifically mentioned that liability under the statute extends to violations of regulations promulgated pursuant to that statute, *id.* § 1693h, the Court" finds that "Regulation E may be enforced through a private right of action[.]").

Wellington alleges that Empower's Courtesy Pay disclosure agreement defines an overdraft as "when you do not have enough money in your account

to cover a transaction, but we pay it anyway." Compl. ¶ 48. She further alleges that the disclosure agreement makes no reference to the term "available balance" or "actual balance" or any other description of how the financial institution assess overdraft fees. *Id.*

Other courts in this circuit have found that a plaintiff plausibly alleged a violation of Regulation E when the financial institution did not adequately define whether overdraft fees would be assessed based on the available balance or actual balance. *Richard v. Glens Falls Nat'l Bank*, 2021 WL 810218, at * 9 (N.D.N.Y. Mar. 3, 2021) (finding that disclosure agreement's reference to balance as "money in the account" rather than "available balance" created "reasonabl[e] belief that [customer] will only be charged an Overdraft or NSF Fee if the amount of a transaction exceeds the funds actually in her account, without regard to any pending credits or debits."); *see also Roy v. ESL Federal Credit Union*, 2020 WL5849297, at *7 (W.D.N.Y. Sept. 30, 2020) (finding that "ESL's failure to explicitly state which method it uses to determine overdrafts, its failure to include the term 'available' in the definition of overdrafts, and its inconsistent use of the term 'available' throughout the Account Agreement creates an ambiguity."). Accordingly, plaintiff has plausibly alleged that Empower violated Regulation E by using ambiguous language to describe when it would assess overdraft fees.

**B.  New York GBL § 349**

Empower contends that Wellington's GBL § 349 claims fail "because Empower FCU's Membership and Account Agreement unequivocally informed Plaintiff that overdraft fees are based on 'available balance.'"  Def.'s Mem. at 9 (citing Ex. A to Siachos Cert.).  In other words, Empower argues that plaintiff has failed to plead that its conduct was misleading in any material way.

The New York General Business Law makes it unlawful to engage in "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service[.]"  N.Y. GEN. BUS. LAW § 349(a).  To state a claim under § 349, a plaintiff must show that (1) the challenged act or practice was consumer-oriented; (2) that the act or practice was misleading in a material way; and (3) that the plaintiff suffered an injury as a result.  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014) (quoting *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000)).

Upon review, Empower's argument that Wellington has failed to plausibly allege that Empower's opt-in notice was misleading in a material way will be rejected.  To meet the second element of GBL § 349, the "deceptive practice 'need not reach the level of common-law fraud to be actionable.'"  *Kelly v. Community Bank, N.A.*, 2020 WL 777463, at *9 (N.D.N.Y. Feb. 18, 2020) (D'Agostino, J.) (quoting *Stutman*, 95 N.U.2d at 29).  Nor does a plaintiff need

to establish that Empower intended to defraud or mislead.  *Id.* (quoting *Nick's Garage, Inc. v. Progressive Casualty Insurance Company*, 875 F.3d 107, 124 (2d Cir. 2017)).  Instead, a plaintiff only needs to establish that the challenged act was dishonest or misleading.  *Id.*

Under prevailing Second Circuit case law, allegations that a disclosure agreement's terms were ambiguous or misleading are sufficient to plausibly allege a claim for relief under GBL § 349.  *Roberts v. Capital One, N.A.*, 719 Fed. App'x 33, 36 (2d Cir. 2017) (finding that because definition of term "overdraft" was ambiguous, dismissal pursuant to Rule 12(b)(6) was improper).

Further, at least one court in this district has found that a disclosure agreement that described an overdraft as "when you do not have enough money in your account to cover a transaction, but we cover the transaction on your behalf" was actionable as a misleading statement under § 349.  *Kelly*, 2020 WL 777463 at *9.  The language in *Kelly* is strikingly similar to the language that Wellington alleges Empower utilized in its own disclosure agreement.  Compl. ¶48 (alleging that Empower defines an overdraft as "when you do not have enough money in your account to cover a transaction, but we pay it anyway").

Notably, instead of addressing the sufficiency of Wellington's factual allegations, Empower's argument once again rests entirely on extraneous

documents that the Court has already chosen to exclude from consideration.  Def.'s Mem. at 10–11 (citing Exs. A and B to Siachos Cert.).  Accordingly, plaintiff has plausibly alleged a claim for relief under GBL § 349.

## V. <u>CONCLUSION</u>

Wellington has plausibly alleged that Empower violated Regulation E and GBL § 349 by improperly assessing overdraft fees based on her available balance, contrary to the terms of her disclosure agreement.

Therefore, it is

ORDERED that

1. Empower's motion to dismiss is DENIED; and

2. Empower shall file an answer to the complaint on or before April 26, 2021.

IT IS SO ORDERED.

Dated:  April 13, 2021
        Utica, New York.

David N. Hurd
U.S. District Judge